IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

                                      Case No. 19-CR-1426-MV

  v.

MARCUS ALAN JONES,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Marcus Jones' Motion to Compel Discovery Pursuant to *Brady v. Maryland* & Fed. R. Crim. P. 16(a)(1)(E)(i). Doc. 21. The government filed a timely Response in opposition. Doc. 23. Having considered the Motion, the relevant law, and being otherwise fully informed, the Court finds that the Motion is not well-taken and accordingly will be **DENIED**.

## BACKGROUND

Mr. Jones is charged in a one-count indictment with Possession with Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Methamphetamine. Doc. 11 at 1. The charge stems from an encounter Mr. Jones had with Drug Enforcement Administration (DEA) Special Agent (SA) Jarrell Perry aboard a Greyhound bus on May 5, 2019. Doc. 21 at 1. On that date, SA Perry reportedly engaged Mr. Jones in a consensual conversation. Doc. 23 at 1–2. After finding no contraband in two bags belonging to Mr. Jones, SA Perry noticed that he was wearing "long pants, a hooded pullover sweatshirt, and a winter jacket." *Id*. at 2. Finding these clothes unusual for the weather and time of year, SA Perry reportedly asked for and received permission to conduct a pat down search, which revealed "numerous hard bundles concealed underneath the

clothing and around [Mr. Jones'] waist." Doc. 23 at 2. Mr. Jones was then taken to the DEA's Albuquerque District Office, where agents removed ten clear plastic heat-sealed bundles taped around his waist. *Id*. The bundles weighed approximately 5.45 kilograms, and the substance in one of them field-tested positive for methamphetamine. *Id*. at 2–3.

SA Perry testified at the preliminary hearing held in this case on May 7, 2019. Doc. 9. During his testimony, he disclosed that after he arrested Mr. Jones on May 5th, 2019, he obtained information in a separate investigation about who owned the drugs in question. Doc. 9 at 35:20–22 (Transcript of May 7, 2019 Preliminary Hearing). SA Perry stated that he did not have that information until after the arrest, however, and denied knowing anything about Mr. Jones at the time of arrest. Tr. at 35:9–14, 36:24–37:1.

Mr. Jones now moves this Court to compel the production of four categories of information:

(1) All passenger lists Agent Perry consulted in connection with Mr. Jones' arrest;

(2) Information regarding the other investigation, including when it began, any relationship it had to Mr. Jones, and how information pertaining to Mr. Jones was gathered;

(3) Any and all documents and objects concerning, or obtained as part of any investigation that caused Agent Perry to suspect Mr. Jones of wrongdoing, or otherwise led him to approach Mr. Jones; and

(4) Any and all documents and objects concerning, or obtained as part of any investigation that identifies the owner of the drugs that Mr. Jones was carrying.

Doc. 21 at 2–3.

In support, Mr. Jones argues that the requested information would "indicate additional avenues of investigation, areas to explore on cross-examination, and assist in case theory development." *Id*. at 3–4. More specifically, he argues that information about the other investigation acknowledged by SA Perry could go to the voluntariness of the encounter on the bus,

and whether the government was conducting a prior investigation into Mr. Jones using "untested or illegal strategies to gather information." *Id*. at 5. He points to findings in other cases that SA Perry's encounters do not appear to be random, and to evidence that the DEA employs "parallel construction" to hide secondary investigations into targets. *Id*. at 6–7. He further submits that the passenger lists would help "in everything from organizing rebuttal and impeachment, case theory, and… helping to identify other witnesses." *Id*. at 5.

In its Response, the government first asserts that on the day Mr. Jones was arraigned, it provided the defense with "all of the discovery in the United States' possession that is related to this case" including "investigative reports, photos, a recording of the initial encounter, a video of the interview, receipts for cash and other items, reports on [Mr. Jones'] personal history and criminal history, and a video of [Mr. Jones] being processed at the ADO and the drugs being removed from his body." Doc. 23 at 4.

The government next addresses each of the categories of requested information. Doc. 23 at 7–8. As to the passenger lists, the government represents that none exist in this case. *Id*. at 7. As to information about the other investigation, it argues that such information is not material to the preparation of Mr. Jones' defense because "it would not tend to undermine the evidence presented against the defendant in any way." *Id*. As to any documents or objects that caused SA Perry to approach Mr. Jones or suspect him of wrongdoing, the government represents that "the circumstances related to the consensual encounter between SA Perry and [Mr. Jones] on the bus are the sole basis for SA Perry to suspect [him] of wrongdoing," and that "[t]here are no additional documents or objects that caused SA Perry to suspect [Mr. Jones] of wrongdoing." *Id*. at 8. Finally, as to documents concerning or identifying the owner of the drugs that Mr. Jones was carrying, the government argues that this information "is not material to the United States' case-

in-chief" because a conviction on the charge of Possession with Intent to Distribute Methamphetamine "requires no determination" about the ultimate owner of the drugs.  *Id.*

## DISCUSSION

### I.    Legal Standard

There is no general constitutional right to discovery in a criminal case.  *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  The government, however, must make the disclosures required by due process under *Brady v. Maryland*, 373 U.S. 83 (1963), and by the Federal Rules of Criminal Procedure.

Rule 16 of the Federal Rules of Criminal Procedure provides in pertinent part that "[u]pon defendant's request, the government must permit the defendant to inspect and to copy" documents "within the government's possession, custody, or control" if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."  Fed. R. Crim. P. 16(a)(1)(E).  Items that fall under the purview of Rule 16 include "books, papers, documents, data, photographs, tangible objections, buildings or places."  *Id.*  The Rule also extends to "the results or reports of any physical or mental examination and of any scientific test or experiment."  *Id*. at (a)(1)(F). However, a defendant is presumptively not entitled to "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" or material covered by the Jencks Act.  Fed. R. Crim. P. 16(a)(2).  *See also* 18 U.S.C. § 3500.

The Supreme Court has explained that, in the context of Rule 16, evidence "material to preparing the defense" refers specifically to arguments that respond "to the Government's case in chief" rather than simply any argument that might ultimately prevent a conviction.  *United States*

*v. Armstrong*, 517 U.S. 456, 462 (1996). *See also United States v. Lujan*, 530 F. Supp. 2d 1224, 1234 (D.N.M. 2008) ("The term 'defense' means an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged."). Given this definition of materiality, nothing in Rule 16 or *Armstrong* conflicts with the government's obligation under *Brady* and its progeny. *See, e.g.*, *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) ("Under *Brady,* the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment."). For purposes of Rule 16(a)(1)(E)(i), materiality "means more than that the evidence in question bears some abstract logical relationship to the issues in the case." *See United States v. Burger*, 773 F. Supp. 1419, 1424 (D. Kan. 1991) (citation omitted). Rather, "there must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Id.* (citation omitted); *see also United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993).

Where a defendant requests undisclosed evidence from the government, a "defendant must make a prima facie showing of materiality." *Lujan*, 530 F. Supp. 2d at 1234. However, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). While this burden is not a heavy one, "the defendant must make a specific request for the item together with an explanation of how it will be helpful to the defense." *United States v. Jordan,* 316 F.3d 1215, 1250 (11th Cir. 2003) (internal quotation marks omitted).

Rule 16 only requires production of information within the government's "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). *Brady* only requires the disclosure of

information that can be said to be within the government's possession or knowledge, either actual or constructive. *Lujan*, 530 F. Supp. 2d at 1231 (citing *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999)). While the government may not circumvent *Brady* requirements by remaining ignorant of the information available, it does not have "an affirmative duty under *Brady* to seek out information that is not in its or its agents' possession." *Id*. (citing *United States v. Graham*, 484 F.3d 413, 415–18 (6th Cir. 2007)).

## II. Analysis

### a. Passenger Lists

As noted above, the government has represented that no passenger lists exist in this case. *See* Doc. 23 at 7. Relying on that representation, the Court finds that Mr. Jones' request for passenger lists is accordingly moot. *See* Fed. R. Crim. P. 16(a)(1)(E) (only requiring the production of information within the government's possession, custody, or control); *Lujan*, 530 F. Supp. 2d at 1231 (stating that *Brady* only requires the disclosure of information within the government's actual or constructive possession or knowledge).

### b. Information Regarding the Other Investigation

As to information regarding the other investigation SA Perry alluded to at the preliminary hearing, the Court finds that Mr. Jones has not made the requisite *prima facie* showing of materiality to support his request for this information. Although Mr. Jones suggests that information about the other investigation could reveal that his encounter with SA Perry on the bus was targeted rather than random and consensual, SA Perry testified under oath that he had no information about Mr. Jones prior to the encounter and arrest. Tr. at 36:24–37:1. The government has further represented that the information about the other investigation "would not tend to undermine the evidence presented against the defendant in any way." Doc. 23 at 7. Nor is there

any indication that the government will refer to the other investigation in its case-in-chief, the other ground for discovery under Rule 16. *See* Fed. R. Crim. P. 16(a)(1)(E). The Court accepts the government's representations and expects that it will continue to comply with its constitutional obligations under *Brady* to disclose any evidence that is "favorable to the defense and material to the defendant's guilt or punishment." *Smith*, 132 S. Ct. at 630.

### c. Documents and Objects That Caused SA Perry to Suspect Mr. Jones of Wrongdoing or Otherwise Led Him to Approach Mr. Jones

Because the government has represented that there are no documents or objects that SA Perry relied on when approaching Mr. Jones other than the circumstances surrounding the reportedly consensual encounter, [Doc. 23 at 7–8], the Court finds this request to be moot for the same reasons stated above in subsection a.

### d. Documents and Objects Concerning or Identifying the Owner of the Drugs that Mr. Jones Was Carrying

Finally, the Court finds that Mr. Jones has failed to establish the materiality of documents and objects relating to the owner of the drugs that he was allegedly carrying on May 5, 2019. As the government points out, it need not put on evidence about the actual owner of the drugs to prove that Mr. Jones possessed them with the intent to distribute. *See* Doc. 23 at 8. And as the Supreme Court explained in *Armstrong*, evidence is only "material to the defense" to the extent it goes to rebut the government's case-in-chief. 517 U.S. at 462.

**CONCLUSION**

For the reasons stated above, Mr. Jones' Motion to Compel Discovery Pursuant to *Brady v. Maryland* & Fed. R. Crim. P. 16(a)(1)(E)(i) [Doc. 21] is hereby **DENIED**.

ENTERED this 24th day of October, 2019.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Alejandro B. Fernandez                     Matthew T. Nelson
*Attorney for Mr. Jones*                      *Assistant United States Attorney*